Case 4:24-cv-03557   Document 13   Filed on 07/18/25 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMY TAMASKA, § | |
| BOP #79423-112 § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | CIVIL ACTION NO. H-24-3557 |
| § | |
| TANISHA HALL, Warden, FPC Bryan § | |
| § | |
| Respondent. § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Amy Tamaska (#79423-112), is detained in the United States Bureau of Prisons at the Federal Prison Camp in Bryan, Texas. She filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, as amended, challenging the result of a disciplinary proceeding and arguing that she is entitled to First Step Act Time Credits.[1] (*See* Docket Entry No. 6). The respondent, Warden Tanisha Hall, has filed a motion to dismiss or, in the alternative, for summary judgment. (Docket Entry No. 12). Tamaska has not filed a response. Having reviewed the petition, the motion, the record, and the applicable law, the court grants Warden Hall's motion and dismisses Tamaska's petition without prejudice. The reasons are explained below.

**I.     Background**

The facts in this section are taken from the amended petition, exhibits submitted with Warden Hall's motion, and publicly available court records.

---

[1] Warden Hall refers to the time credits earned under the First Step Act by the acronym "FSA ETCs" (that is—First Step Act Earned Time Credits). The Bureau of Prisons rules refer to the credits as "FSA Time Credits." The court uses "First Step Act Time Credits" in this opinion to refer to those credits earned under the First Step Act.

In October 2021, Tamaska was convicted of conspiracy to possess methamphetamines with the intent to distribute. (*See United States v. Tamaska*, Criminal Action No. 1:19-cr-101, at Docket Entry No. 54 (D. Mont., Oct. 21, 2021)). She received an 84-month sentence. (*See id.*). Tamaska's projected release date is March 12, 2026. *See Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 14, 2025).

Tamaska filed her initial federal habeas petition on September 19, 2024. (*See* Docket Entry No. 1). On September 24, 2024, while she was at FPC Bryan, Tamaska received an incident report after being accused of violating a furlough condition. (*See* Docket Entry No. 12-2 at 2). Warden Hall has submitted a declaration from Garrett Patterson, who is a Unit Manager for the BOP, as an exhibit to her motion. (*See id.*, Declaration of Garrett Patteson). Patterson is the chair of the Unit Discipline Committee at FPC Bryan ("UDC"). (*Id.*). In his declaration, Patterson summarizes the circumstances leading up to the incident report and the aftermath:

> 3. . . . On September 24, 2024, Tamaska and another inmate, who BOP also sanctioned, were furloughed to train at an assisted living facility ("ALF") for the day. (*Id.*, § 11 ). The other inmate asked an ALF employee for her "vape," which is prohibited, as Tamaska was standing next to the other inmate. (*Id.*) The employee reported this to her supervisor and said the inmate asked for a vape for her friend. (*Id.*) When BOP staff asked Tamaska about this, she denied any involvement or knowledge. (*Id.*) The other inmate later provided a written statement claiming she only asked for a vape for herself and that Tamaska was not involved. An incident report was initiated alleging Tamaska violated BOP Disciplinary Code 308, Violating a Condition of a Furlough, and BOP Disciplinary Code 313, Lying or Falsifying Statement). (*Id.*,§ l0, Part III)
>
> 4. On September 25, 2024, inmate Tamaska was read her rights as part of the investigation into the incident. (*See* Attachment I, § 23) Inmate Tamaska indicated that she understood her rights, did not request any witnesses, and stated, "This is not true, that she did not ask for anything!" (*Id.*, §§ 24-25) At the conclusion of the investigation, Lieutenant E. Jones found she had been properly charged and that both charges were supported by the evidence; he then forwarded it to the UDC for further processing. (*Id.*,§§ 26, 27)
>
> 5. In accordance with 28 C.F.R. § 541.7(c), the UDC hearing for Incident Report 4001343 was held on September 30, 2024. Inmate Tamaska

appeared at the UDC hearing and stated, "I did not do anything wrong, this is not true." (Attachment 1, § 17) The UDC consisted of myself, as chairman, and another BOP staff member. (*Id.*, § 21)

6. We concluded that inmate Tamaska committed violations of BOP Disciplinary Code 308, Violating a Condition of a Furlough, and BOP Disciplinary Code 313, Lying or Falsifying Statement, as charged. (*Id.*,§§ 10, 18-19)

7. The specific evidence we relied upon included the memorandum from the ALF employees containing their observations of what occurred. (*See* Attachment 1, § 19) The ALF memorandum contained a statement from the other inmate that contradicted her subsequent written statement claiming Tamaska was not involved.

8. I imposed the following sanctions on inmate Tamaska for Incident Report 4001343: loss of email and commissary privileges for 30 days. (*Id.*,§ 20) The matter was not referred to the Disciplinary Hearing Officer. (*Id.*)

9. At the conclusion of the hearing, inmate Tamaska was informed of the findings and sanctions imposed. (*Id.*, § 18) I also advised inmate Tamaska of her right to appeal the hearing via the administrative remedy process. (*See id.*)

(*Id.* at 2–3).

Tamaska filed an amended petition for a writ of habeas corpus on October 21, 2024. (*See* Docket Entry No. 6 at 8). In the petition, Tamaska asserts two claims for relief. First, she challenges the result of the disciplinary proceeding and asks that the disciplinary findings and sanctions be expunged from her record and that her recidivism classification be changed from medium to low. (*See id.* at 6, 7). Second, she claims that she is entitled to time credits under the First Step Act for the time she spent in jail prior her federal conviction. (*Id.* at 6, 7). She asks to be immediately placed on supervised release or home confinement. (*Id.* at 7).

## II.      The Legal Standards

### A.      The Summary Judgment Standard

Summary judgment is proper when the record shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (cleaned up). "The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial[.]" *Id.*

When determining whether factual disputes preclude summary judgment, the court views any disputed facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citation omitted). This general rule "applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The nonmoving party must point to record evidence that supports a conclusion that there are factual issues material to determining summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely on the allegations or denials in pleadings or on her own unsubstantiated assertions to avoid summary judgment. *See Anderson*, 477 U.S. at 256; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

B.  **Pleadings from Self-Represented Litigants**

Tamaska is representing herself. Habeas petitions filed by self-represented litigants are not held to the same standards as pleadings filed by lawyers, and instead must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Even under a liberal construction, a self-represented litigant "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (footnotes omitted).

### III. Discussion

Warden Hall argues that Tamaska's habeas petition should be dismissed because she failed to fully exhaust the administrative remedies available to her through the Bureau of Prisons before filing her petition.

A prisoner must exhaust available administrative remedies before challenging the administration of the sentence in a federal habeas petition. *See Gallegos-Hernandez v. United States,* 688 F.3d 190, 194 (5th Cir. 2012) (per curiam); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). A prisoner must "fairly present" all claims through all steps of the available administrative remedy process before pursuing federal habeas relief. *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)). Prisoners who voluntarily stop pursuing their administrative remedies prematurely have not exhausted those remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Similarly, a prisoner who either starts or continues administrative remedy proceedings after filing the habeas petition has not exhausted. *See Cartwright v. Outlaw*, 293 F. App'x 324, 324 (5th Cir. 2008) (per curiam); *Little v. U.S. Parole Comm'n*, 67 F. App'x 241, 2003 WL 21108493, at *1 (5th Cir. Apr. 21, 2003) (per curiam) (finding that an administrative appeal filed "right after" a prisoner files his or her habeas petition did not satisfy the exhaustion requirement). When a prisoner fails to exhaust the available administrative remedies before filing a habeas petition, the petition is subject to dismissal. *See Fuller*, 11 F.3d at 62.

Relevant to a claim for First Step Act Time Credits, the Bureau of Prisons provides a four-step administrative remedy process through which prisoners may present a complaint. *See* 28

C.F.R. §§ 542.10–542.18.[2] In the first step, the prisoner uses a BP-8 form to present the issue to staff at the facility where he or she is housed. *See* 28 C.F.R. § 542.13(a). If the issue is not resolved to the prisoner's satisfaction, the second step is for the prisoner to file a formal Administrative Remedy Request with the warden using a BP-9 form. *See* 28 C.F.R. § 542.14(a). The warden has 20 days to respond, which may be extended for an additional 20 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within that time, the request is deemed denied. *Id.* A prisoner who is not satisfied with the response can appeal to the Regional Director within 20 days of the warden's response, using a BP-10 form. *See* 28 C.F.R. § 542.15(a). The Regional Director has 30 days to respond to the appeal. That period may be extended once for another 30 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response to the appeal within the permitted time, including any extension, the appeal is viewed as denied. *Id.* A prisoner who is not satisfied with the Regional Director's response may appeal to the Office of General Counsel, using a BP-11 form, within 30 days of that response. *See* 28 C.F.R. § 542.15. The Office of General Counsel has 40 days to respond to the appeal. That period may be extended once by 20 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within that time, the appeal is viewed as denied. *Id.* The appeal to the Office of General Counsel is the final administrative appeal within the Bureau of Prisons. *Id.*

      Warden Hall asserts that Tamaska's claim for First Step Act Time Credits for the time she spent in presentence custody and her request to expunge her disciplinary records are unexhausted. The evidence Warden Hall provided shows that Tamaska has failed to fully exhaust her administrative remedies before filing her habeas petition. (*See* Docket Entry No. 12-1, Affidavit

---

[2] Warden Hall has provided documents about the administrative remedy process in a declaration from Tanya Smith, a Case Management Coordinator at the BOP, submitted with Hall's motion. (*See* Docket Entry No. 12-1).

6

from BOP Employee Tanya Smith and attached exhibits). Tamaska filed her original habeas petition on September 19, 2024, which was before she completed the administrative remedy process for her request to expunge her disciplinary records. Tamaska has not sought an administrative remedy for her claim that she has not received First Step Act Time Credits for her time in presentence custody.

Tamaska has not satisfied her burden to show that there are factual disputes material to determining whether she properly and fully exhausted her available administrative remedies. Tamaska failed to fairly present her claims through all steps of the administrative remedy process before filing her habeas petition. Her petition is dismissed without prejudice for lack of exhaustion.

## IV. Conclusion

The court grants the respondent's motion to dismiss or, in the alternative, motion for summary judgment, (Docket Entry No. 12), and dismisses Tamaska's petition without prejudice because she failed to exhaust her administrative remedies. The court denies as moot any remaining pending motions. No certificate of appealability will be issued. *See Padilla v. United States*, 416 F.3d 424, 425 (5th Cir. 2005) (per curiam); *Pack v. Yusuff*, 218 F.3d 448, 451 n.3 (5th Cir. 2000).

SIGNED on July 18, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge